## Cremer v. Modern Woodmen of America

*John W. Himebaugh,* for plaintiff.

*Brooks, Curtze & Silin,* for defendants.

EVANS, J., June 10, 1941.—Plaintiff was first employed by defendant about ten years ago and became State manager for Pennsylvania in October 1936. He represented the company until December 31, 1939, under successive written contracts of employment, the last of which was executed February 25, 1938. This contract described the services to be rendered by plaintiff and these included supervision of field work, organizing of local camps, building up of local camps already organized, procuring new members, conserving existing members' insurance, procuring reinstatement of lapsed certificates, etc. The contract further provided territories in western Pennsylvania and western

New York, in which the contract was to be effective, and also included provisions for overwriting commissions, overwriting renewal commissions, commissions to be paid on personal production, etc. Section 3 of part III provides:

"No commission will be paid the State manager on any overwriting commission or overwriting renewal commission referred to in sections 1 and 2 of part III, after the month in which this contract is terminated, in accordance with its terms."

Section 29 of part IV provides: "Either party to this contract may terminate same without cause and the power of the State manager to collect and receive premiums or to represent the society in any capacity shall cease with the termination of this contract."

Plaintiff resigned his position December 31, 1939, and brought this suit to recover overwriting commissions on insurance written in his territory by his district managers or agents up to the date of his resignation. A stipulation was filed, after the bringing of this suit, to the effect that there remained unpaid and owing defendant the sum of $165.25 covering overwriting commissions on premiums paid in plaintiff's territory in December 1939. Further claim is made for commissions on business written prior to plaintiff's resignation but actually paid into the company by the policyholders after plaintiff's resignation, but within the year following said resignation. This amount is stipulated to have been $1,797.08. Plaintiff contends a reasonable construction of the contract requires the conclusion that plaintiff is entitled to commissions on the business placed on the company's books prior to his resignation, even though collection therefor was not had until after plaintiff's resignation. Defendant contends that in this type of insurance, most of which is paid in weekly and monthly instalments, active efforts must be put forth to supervise, encourage payment, and to collect the premiums; that the actual writing of the

insurance is only part of the consideration for commission agreed upon; that the agent, after resignation, did not perform other portions of the service, and because this situation frequently arises in defendant's agencies generally it became necessary to insert in this and all contracts section 3, part III, to the effect that no commission will be paid the State manager after the contract has been terminated. It may or may not be true that the section referred to is harsh, but it cannot be ignored. It was part of the entire contract governing the rights of these parties, was assented to by the parties, and must be given effect: Huselton v. Eddie Bald Motor Car Co., 81 Pa. Superior Ct. 526. A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together: A. L. I. Restatement of Contracts §235; Minkoff v. McLean et ux., 295 Pa. 396. The exact situation has been ruled upon by the Court of Civil Appeals of Texas in Wyatt v. Southwestern Life Ins. Co., 149 S. W. (2nd) 1063. In that case, under similar facts, the agent was refused commissions claimed. Inasmuch, however, as defendant in this case admits commissions due plaintiff on premiums paid during the month of December 1939 and prior to plaintiff's resignation, and as that amount was due and unpaid at the time this suit was brought, we must enter judgment for plaintiff in the amount admitted to be due. A stipulation is to the effect that a check for $165.25 has been tendered plaintiff, and if this has been accepted and cashed there will remain only the necessity for payment of costs by defendant.

And now, to wit, June 10, 1941, judgment is entered for plaintiff in the sum of $165.25, payable only in case that amount has not been received by Paul D. Cremer from proceeds of defendant's check dated April 30, 1941. Defendant shall pay the costs of the proceeding.